M. Lamadrid & Co., Sucs., Demandantes y Apelantes *v.* Torrens Martorell & Co. et al., Demandados y Apelados.

Apelación procedente de la Corte de Distrito de San Juan, Sección Primera, en pleito sobre cobro de dinero.

No. 2053.—Resuelto en julio 31, 1920.

Excusión—Sociedad Regular Colectiva—Bienes Particulares de los Socios—Embargo—Ejecución de Sentencia.—El socio de una compañía regular colectiva queda colocado, para todos los fines prácticos en el lugar de un fiador solidario de la sociedad, por lo que puede ser incluído como demandado en una acción establecida contra ésta para cobro de dinero; y para dejar a salvo su derecho al beneficio de excusión que le reconoce el artículo 237 del Código de Comercio, bastará que la sentencia disponga que sólo sean embargados y ejecutados bienes particulares del socio demandado para satisfacer la sentencia, en el caso de que el márshal devuelva la orden manifestando que no ha encontrado bienes de la sociedad o que los ejecutados no alcanzaron a cubrir el importe de la sentencia.

Los hechos están expresados en la opinión.

Abogado de los apelantes: Sr. *José de Guzmán Benítez.*
Abogado de los apelados: Sr. *L. Llorens Torres.*

El Juez Asociado Sr. Hutchison, emitió la opinión del tribunal.

M. Lamadrid & Co., Sucs., establecieron una acción contra Torrens, Martorell & Co. *et al.* y Miguel Martorell Torrens como socio gestor colectivo, para el cobro de una deuda contraída por la sociedad demandada.

Alegaba la demanda entre otras cosas que la sociedad demandada había suspendido sus negocios, cerrado el establecimiento y oficinas sin dar aviso a sus acreedores o liquidar su pasivo y que sustrajo y ocultó todos sus bienes sin constituirse en liquidación ni dejar a persona alguna encargada de entenderse con los acreedores, contestar sus reclamaciones ni arreglar en forma alguna sus compromisos.

La demandante suplicó a la corte que dictara sentencia condenando a ambos demandados solidariamente al pago de la suma de $2,589.65 y sus intereses al tipo legal desde la fecha de la radicación de la demanda, debiendo hacerse efectivo dicho pago con los bienes del demandado Miguel Martorell en defecto de los de dicha sociedad deudora; y condenarles también a pagar los gastos y costas de este pleito incluyendo honorarios de abogado.

La sociedad demandada no contestó la demanda ni compareció. El socio contestó negando los hechos alegados en la demanda y celebrado el juicio la corte de distrito dictó sentencia contra la sociedad demandada por la suma de $2,589.65, interés legal, costas y honorarios de abogado "sin perjuicio de que la demandante en su día una vez hecha excusión en los bienes de la sociedad demandada, ejercite las acciones que pueda tener contra los socios colectivos de la mercantil demandada."

La sociedad demandante interpone apelación contra esta sentencia en tanto dicha sentencia omite resolver la demanda en cuanto a Miguel Martorell o por no haberse condenado a Martorell en su carácter de socio colectivo de la sociedad demandada, responsable solidario de sus obligaciones a pagar solidariamente con dicha sociedad la suma reclamada en

la demanda y las demás responsabilidades según se expresaba en la referida sentencia dictada contra dicha sociedad.

La teoría de la corte inferior y el criterio allí sustentado respecto a la prueba que fué presentada han sido reseñados por el juez sentenciador en la siguiente forma:

"En el juicio se presentó por la demandante prueba documental que consistió en la escritura otorgada ante el Notario don José de Guzmán Benítez en 20 de octubre de 1917, por Freiría Hermanos, M. Pascual & Co. y Malgor, Luiña & Co. y M. Lamadrid & Co., por la que las tres primeras venden a M. Lamadrid & Co. los créditos que tienen contra Torrens, Martorell & Co. por las mismas sumas que se alegan en la demanda. Y acerca de este extremo el demandado Martorell hizo en juicio la expresa admisión de que la sociedad Torrens, Martorell & Co. adeuda esas sumas a la demandante. El hecho se haya bien probado. Es verdad que ahora, al argumentar el caso, el demandado alega que su admisión no perjudica a la social Torrens, Martorell & Co. porque la admisión de un socio, una vez extinguida la sociedad, no perjudica a ésta. Pero este demandado ha querido olvidar dos extremos: que viene probando que la sociedad se halla en liquidación; y que ha probado que él mismo es uno de los liquidadores. Y si la sociedad se halla en liquidación no se ha extinguido; y si él es un liquidador, sus admisiones en cuanto a deudas de la social que él liquida son eficaces y no se parecen en nada a las que pueda hacer un socio, no liquidador, en cuanto a deudas de una sociedad extinguida.

"Se demostró que la mercantil demandada no llevaba contabilidad en forma, sino en unas libretas, sin arreglo a método legal.

"No se ha probado de manera que convenza a la corte que esta sociedad demandada haya ocultado sus bienes, dejando de pagar, en general, a sus acreedores. No se ha probado la alegación de la demandante de que la mercantil 'Torrens, Martorell & Co.' no se haya constituído en liquidación, ni designado persona que liquide sus cuentas; y por el contrario se probó, por el demandado, por medio de escritura de 12 de septiembre de 1917, ante el notario don Nemesio Canales, Exh. 2 del demandado, que se constituyó una liquidación en la que los tres socios Miguel Martorell Torrens, Juan Luis Torrens y Luis Martorell, quedaron encargados de la liquidación de la sociedad; tal escritura aparece inscrita en el Registro Mercantil de San Juan en 6 de octubre de 1917, con antelación de

16 días a la presentación de la demanda original; y esta inscripción es aviso o noticia suficiente de la existencia de la liquidación.

"Constituída una sociedad mercantil en liquidación con arreglo al Código de Comercio, la personalidad social subsiste, en cuanto a la percepción de créditos, extinción de obligaciones contraídas de antemano, y realización de operaciones pendientes. (Véase el artículo 228 del Código de Comercio). Los liquidadores representan a la sociedad para esos fines; y la sociedad en liquidación continúa viva para aquellos efectos.

"No está demostrado en este juicio que la mercantil Torrens, Martorell y Compañía carezca de bienes con que pagar sus obligaciones; ni que la liquidación de la misma se haya terminado, sin que hayan quedado bienes con que cubrir el pasivo.

"No prueba la insolvencia de la social demandada el hecho de que uno o más testigos digan ante la corte, que en la tienda que tenía dicha social, no quedaban más que unas botellas y unas cajas de fósforos; porque, fuera de que esos testigos no han podido traer aseveración alguna en cuanto a si habían otras mercancías en el interior de la casa tienda, lo que ellos manifestaron no prueba que la demandada no tuviera otros bienes, inmuebles, créditos, etc.

"No se ha probado que la misma social demandada haya hecho ocultación de bienes. Aún en el caso de que hubiera prueba bastante para declarar qué mercancías de la tienda (no se sabe cuáles ni en qué cantidad), se han trasladado a casa de uno de los socios y liquidadores, no creemos que esto sería una ocultación fraudulenta, a menos que se probara que esas mercancías se habían hecho desaparecer, y se habían enajenado privadamente y fuera del curso de la liquidación.

"En estas condiciones, la corte cometería un grave error al dar paso a una acción contra uno de los socios colectivos de Torrens, Martorell y Compañía cuya situación legal es la de 'en liquidación,' mientras no se pruebe el alzamiento, ocultación fraudulenta de bienes, o la insolvencia de dicha social, y no antes de que se haga excusión de bienes de 'Torrens, Martorell y Compañía.' "

Al resolverse una apelación interpuesta contra una orden que declaraba sin lugar una moción para que se dejara sin efecto el embargo trabado sobre bienes del demandado Martorell, apelación que fué resuelta en julio 7 del año pasado, 27 D. P. R. 599, este tribunal dijo lo siguiente:

"Si el artículo 237 del Código de Comercio puede invocarse en un pleito establecido no solamente contra la sociedad sino también directamente contra el socio que alega el beneficio de excusión y en el cual se alega en la demanda jurada, no por información y creencia sino como un hecho de conocimiento personal del demandante, la discontinuidad de los negocios, el cierre de puertas, la sustracción, ocultación de bienes y los infructuosos requerimientos hechos tanto a la firma como al dicho socio, entonces creemos que con tal alegación acompañada de una fianza buena y suficiente se cumple substancialmente *'prima facie'* con el requisito de la excusión en el haber de la sociedad.

"(Véase también el caso de *Royal Bank of Canada* v. *Vázquez,* caso número 1892, resuelto en mayo 29, 1919.)

"Ciertamente este aspecto de la cuestión no hace más gravosa la situación del socio que responde solidaria y mancomunadamente de las deudas de la sociedad de lo que la ley exige al fiador que si bien su obligación no es de tal alcance si deseara aprovecharse del beneficio de que sean embargados los bienes del deudor principal, será su deber señalar bienes sujetos a embargo para su venta que pertenezcan al dicho deudor."

Los hechos que de tal modo se resolvió que constituían la debida excusión del haber de la sociedad con el fin de sostener un embargo trabado en bienes de uno de sus socios, quedaron establecidos por la prueba del demandante, y el caso *"prima facie"* así presentado a falta de alguna explicación o esfuerzo para contradecirlos y aún cuando no estuviera robustecido más bien que debilitado por la prueba de la demandada, constituye suficiente excusión de los bienes de la sociedad para que pueda basarse en ella una sentencia en la forma indicada en la súplica de la demanda.

Los demandados según parece fueron citados para que presentaran los libros llevados por la sociedad.

Miguel Martorell compareció como testigo de la demandante y en su carácter de socio gestor colectivo de la sociedad demandada, con un pequeño libro de cuentas y que según dijo, otro socio Luis Torrens, le había manifestado que era el único libro que había de la sociedad demandada. Apremiado sobre este punto el testigo repitió primero que este era

el único libro que le dió el otro socio Luis Torrens y declara
por último que dicho libro es el único que tiene la sociedad.

Pedro Pagán, anterior tenedor de libros de la sociedad
demandada, declaró que él llevaba la contabilidad de la so-
ciedad en tres libros ninguno de los cuales habían sido debi-
damente autorizados; que la sociedad· demandada jamás pagó
por las mercancías compradas a la demandante en esta acción
y a otras firmas; que dichas mercancías no permanecían en
el sitio de los negocios de la sociedad demandada sino que
eran trasladadas y almacenadas en la casa de vivienda del
demandado Miguel Martorell; que fueron trasladadas de tal
manera en septiembre del año 1917 y que la existencia que
quedó en la tienda consistía en una pequeña cantidad de
fósforos; que la tienda permaneció abierta, pero los negocios
habían terminado y la sociedad no pagó ninguna de sus cuen-
tas; que la tienda continuó abierta en esta forma hasta mayo
de 1918.

Victorio Ochoa, socio gestor de "M. Lamadrid & Co.,"
manifestó que las compras hechas a la sociedad demandante
se concertaban por el demandado Miguel Martorell; que la
demandante había escrito repetidas veces a la sociedad de-
mandada y al demandado Miguel Martorell sin recibir con-
testación alguna y que los giros librados contra ellos habían
sido devueltos por el banco; que el testigo en cierta ocasión
visitó la tienda de los demandados y que la existencia a la
vista en esa fecha consistía en botellas y fósforos, cuya exis-
tencia tendría solamente un valor de $200 a $250; que pos-
teriormente el testigo visitó de nuevo el sitio de negocios de
los demandados el que encontró cerrado; que el testigo ha
revisado en otras partes y no ha encontrado nada y sin ha-
berse podido encontrar ninguno de los bienes excepto una
casita que vale tal vez $150; que es costumbre comercial
cuando una casa se disuelve pasar una circular anunciando
que determinadas personas se han hecho cargo y que la de-
mandante no ha recibido aviso alguno de que la sociedad
demandada estuviera en liquidación.

Heraclio López, comerciante y agricultor del Dorado, declaró que había visto los libros que llevaba Torrens, Martorell & Cía., con motivo de tener que arreglar las cuentas de la sociedad; que dicha sociedad llevaba tres libros; que el libro que se le muestra al testigo no era uno de éstos y nunca lo había visto entre los que el testigo examinó; que en y después del mes de septiembre de 1917 la sociedad demandada nada tenía o tal vez muy poco era lo que tenía en existencia; que algunas de las mercancías se vendieron y otras fueron trasladadas del sitio de los negocios durante los últimos días de septiembre de 1917, quedando solamente algunos pocos fósforos y latas al cuidado del empleado Pedro Pagán; que en la fecha del juicio, septiembre 1918, la tienda había sido cerrada hacía unos seis o siete meses; que Torrens, Martorell & Cía. no tienen bienes excepto una casita que salieron a vender a un empleado del testigo; que los tres socios tienen bienes pero que no hay nada a nombre de ·la sociedad; que la sociedad no tiene con qué pagar sus deudas.

Alfredo López, comerciante del Dorado, declara que Torrens, Martorell & Cía. no tiene nada; que el testigo había hecho cierto negocio con la sociedad demandada ·y en septiembre de 1917 la existencia estaba casi terminada aunque la tienda se encontraba abierta dicha existencia ·era únicamente de algunos pocos fósforos; que algunas de las mercancías fueron trasladadas antes del mes de septiembre; que el testigo vió la traslación de las mercancías a la ·casa de vivienda ocupada por los Martorell; que hacia mediados del año 1918 quedaban algunos fósforos, un poco de vinagre y un muchacho que nada tenía que hacer; que la tienda estaba cerrada y luego la casa fué alquilada a otras personas; que con excepción de la casita la sociedad demandada no tiene otra propiedad en el Dorado.

José Comas, experto contador mercantil, fué llamado para examinar la libreta presentada por los demandados en acatamiento a la orden librada para que se trajeran los libros

(*subpoena duces tecum*), teniendo entonces lugar el siguiente incidente:

"Dte.: ¿Tenga la bondad de examinar ese libro a ver qué calificación tiene como libro mercantil? Verdaderamente como libro mercantil. * * *

"Ddo.: Nosotros hemos reconocido las deudas esas y reconocemos también que la casa Torrens, Martorell y Co. no llevaba libros de contabilidad mercantil por partida doble sino libretas así y que de esas libretas de la casa Torrens, Martorell & Co. quedaba eso.

"Dte.: Pero yo quiero demostrar que esto no es libro de contabilidad mercantil.

"Ddo.: Eso lo admitimos. Admito que el perito declararía que ese libro no está llevado en forma y que eso no es un libro de contabilidad mercantil.

"Dte.: Yo deseo que se examine ahí si existe la cuenta de M. Lamadrid & Co.

"Ddo.: Si hemos reconocido la cuenta.

"Dte.: Mi pensamiento es probar que los libros han desaparecido.

"Ddo.: Admitimos que de las libretas que llevaba, Torrens, Martorell & Co. solo queda esa libreta."

La demandada presentó como prueba la escritura de constitución social otorgada en enero de 1917 por Miguel Martorell, Luis Torrens y Luis Martorell, que contiene las siguientes cláusulas:

"D. El término de duración de esta sociedad, será por cinco años a contar desde el día primero de febrero de mil novecientos diez y seis a cuya fecha se retrotraen los efectos de este instrumento público que tendrá validez desde esta fecha, cubriendo todas las operaciones, hasta ahora efectuadas.

"E. Las deudas en pro y en contra de alguno de los socios engendradas antes del día primero de febrero de mil novecientos diez y seis figurarán en la cuenta individual de cada uno, sin que por ningún concepto, pueda ser perjudicado o afectado el capital social aportado en la forma que más adelante se dirá, así como las sumas que existan como deudas a favor de algún socio o socios o le corresponderá en su beneficio con anterioridad a la fecha ya dicha, al socio propietario de las mismas.

*Segundo:* El capital de esta sociedad, constará de la cantidad de mil dollars, cuya suma aporta el socio gestor don Miguel Mar-

torell en calidad devolutiva, fijándose como plazo para el pago de esta cantidad por la sociedad a don Miguel Martorell, el día último de junio de mil novecientos diez y siete, sin devengar interés y quedando obligadas las existencias del establecimiento, hasta su extinción.

"*Séptimo:* La sociedad no podrá hacer negocios que excedan del capital social a no ser por acuerdo unánime de todos los socios y se prohibe a la firma social suscribir garantías o fianzas de clase alguna."

La escritura de disolución que también fué presentada como prueba por la demandada, de fecha septiembre 11, 1917, dice lo siguiente:

"Que el estado actual de la sociedad, entre mercaderías existentes, cuentas por cobrar, el valor de dos casas, muebles y el precio del negocio, arroja un inventario ascendente a la suma de cinco mil dollars incluyendo también el dinero existente en caja. Y que el pasivo asciende a una suma de tres mil dólares; habiendo por tanto un balance de dos mil dólares; cuya suma es el beneficio o ganancia que corresponde por igual a los tres socios."

Hasta ahora hemos supuesto sin que al parecer sea necesario y solamente por vía de argumento que una sentencia y ejecución de acuerdo con la misma, en la forma sugerida sin más nada, no cumpliría con el precepto estatutorio y que a pesar de dejar el socio demandado de tomar la iniciativa en este sentido o siquiera alegar en su contestación el beneficio de excusión, el demandante tiene la obligación de probar en el juicio y antes de que se dicte sentencia que la sociedad no tiene bienes suficientes para satisfacer el importe de tal sentencia.

En el tomo 18 de Corpus Juris, página 1138, encontramos la siguiente definición:

"EXCUSIÓN.—En la ley civil es un procedimiento a solicitud de un fiador por el cual el acreedor está obligado a agotar los bienes del deudor principal para el cumplimiento de la deuda antes de recurrir contra el fiador; el comiso y venta de los bienes del principal para satisfacer la reclamación contra él antes de proceder contra los bienes del fiador."

Según Escriche, tomo 2, página 929, excusión es lo siguiente:

"El procedimiento judicial que se hace contra los bienes del deudor principal antes de proceder contra los del fiador para que éste pague la cantidad que aquellos no alcanzan a satisfacer."

Es principalmente una doctrina de la ley referente a fianzas adoptada e incorporada en el Código de Comercio en una forma más o menos modificada o restringida. Un miembro de una sociedad no es un mero fiador sino que es responsable solidaria y mancomunadamente de las deudas de la sociedad sujeto solamente al beneficio de excusión reservado por las disposiciones del artículo 237 cuyo texto español prescribe lo siguiente:

"Sección 237.—Los bienes particulares de los socios colectivos que no se incluyeron en el haber de la sociedad al formarse ésta, no podrán ser ejecutados para el pago de las obligaciones contraídas por ella, sino después de haber hecho excusión del haber social."

Queda pues el socio colocado para todos los fines prácticos en las condiciones de un fiador que firma como "fiador y principal deudor," quedando así hecho responsable solidaria y mancomunadamente en unión del principal. Parece ser consecuencia de esto que en una acción seguida contra la sociedad y un miembro en particular de éste, la disposición hecha en la sentencia para embargo y ejecución, primero contra los bienes de la sociedad y luego contra los del socio demandado solamente en el caso de que el márshal devuelva la orden de embargo manifestando que no se han encontrado bienes de la sociedad demandada (*nulla bona*) o para pagar cualquier saldo después de verificarse el comiso y venta del haber de la sociedad, constituye una excusión suficiente de tal haber.

Verdaderamente, que en la fecha en que se resolvió la primera apelación fué creencia de los miembros de esta corte que estaban más familiarizados con la práctica española, que de acuerdo con el anterior régimen, después de sentencia y

ejecución contra la sociedad, si no se encontraban bienes de dicha sociedad, podían ocuparse y venderse los bienes del socio en particular, aun cuando ninguno de dichos socios hubiere sido hecho parte en la acción.

Según se indicó en la anterior opinión a que nos hemos referido, es notable el corto número de precedentes en la jurisprudencia española y parece haberse dado por sentado más bien que resuelto por los tribunales españoles que el beneficio de excusión de que gozaban los socios de una sociedad comercial, de haber alguna diferencia, es mucho más limitado que en el caso de un fiador.

Aunque esta cuestión quedó sin resolver en gran parte en la anterior apelación, la opinión del juez sentenciador no suministra luz alguna sobre la cuestión y la apelada en este caso ni siquiera ha presentado un alegato.

Una situación muy semejante a la que existe en esta isla parece haberse desarrollado en las Islas Filipinas donde la Corte Suprema ha llegado a casi la misma conclusión que fué sugerida más bien que enunciada definitivamente en la anterior apelación en el presente caso.

En *Vargas & Co.* v. *Chan Hang Chiu*, 29 Jurisprudencia Filipina 446, sostuvo el apelante que siendo Vargas & Co. una sociedad mercantil era necesario en una acción contra ella notificar el emplazamiento a todos los socios y que habiendo sido notificado el emplazamiento solamente al socio gestor, dicho emplazamiento no surtía efecto alguno contra la compañía y los miembros de ella.

La corte resolvió en substancia que una compañía es una entidad jurídica con capacidad para demandar y ser demandada bajo el nombre de la compañía, que en una acción contra tal compañía no es necesario incluir a los socios de la misma como partes demandadas.

En el caso de *De los Reyes* v. *Lukban and Borja*, 35 Jurisprudencia Filipina, la misma corte declaró que los socios que no habían sido incluídos como partes en una acción con-

tra la compañía podían ser demandados individualmente para el cobro de una sentencia que no había sido satisfecha contra la sociedad. El caso no sostiene que el mismo resultado no hubiera podido alcanzarse mediante la oportuna ejecución contra los socios individualmente después de devuelto el mandamiento por el márshal manifestando no haber hallado bienes (*nulla bona*) a virtud del auto contra la sociedad, aunque para los fines de la presente opinión puede admitirse el hecho. Ni se sugiere remotamente que los socios individuales no hubieran sido partes demandadas adecuadas en la acción seguida contra la sociedad. La opinión disidente se fundaba en la razón, entre otras, que bajo la práctica española que no había sido afectada por el cambio de soberanía, una nueva ejecución (*alius execution*) contra el socio individual era bastante; que no se permitía una nueva acción y de ser entablada no era una nueva causa de acción sino meramente un método de poner en vigor la sentencia original.

La parte sustancial de la opinión de la mayoría del tribunal aparece en el sumario como sigue:

"El acreedor que no ha conseguido cobrar judicialmente su crédito que le era en deber una sociedad colectiva por insolvencia de ésta, tiene derecho a dirigir su reclamación contra los socios que formaron parte de dicha sociedad en la forma que autoriza el artículo 127 del Código de Comercio, puesto que todos y cada uno de los socios colectivos se hallan obligados personal y solidariamente con sus bienes a las resultas de las operaciones ejecutadas a nombre y por cuenta de la compañía, bajo la firma de ésta, por persona autorizada para usarla.

"La excusión de bienes, condición exigida por el artículo 237 del mismo código para enjuiciar bienes particulares de los socios, se considera cumplida cuando por el resultado de lo actuado por el *sheriff* en virtud de un mandamiento de ejecución expedido para llevar a efecto una sentencia firme, aparezca demostrada la absoluta carencia de bienes propios de la extinguida sociedad colectiva deudora, y cuando el socio demandado después individualmente no ha podido justificar que realmente existen bienes de la sociedad de que formó parte.

"Aunque hubiere perfecta identidad en la causa o motivo de acción y la cosa reclamada entre una acción ejercitada contra una sociedad colectiva para el cobro de un crédito y la acción entablada contra los socios personalmente para el cobro de una parte de dicho crédito no solventado si son diferentes los demandados y la cualidad con que lo fueron, toda vez que la primera acción aparece dirigida contra la sociedad deudora y la segunda ha sido ·ejercitada contra los que han sido socios individualmente, no es procedente alegar contra esta segunda acción excepción de cosa juzgada en virtud de sentencia recaída en la primera a tenor del artículo 1252 del Código Civil y del artículo 307 del Código de Procedimiento Civil."

El punto interesante de la opinión disidente y el único aspecto de la misma que ahora consideramos es el que aparece en el siguiente párrafo:

"La tercera cuestión que se presenta es la de si, aún admitiendo el derecho del demandante a mantener una acción fundada en la antigua sentencia, el remedio que le cabe es que se dicte una nueva sentencia contra los miembros de la sociedad individualmente, o que se ejecute la antigua sentencia contra ellos dictada? Según las leyes tanto substantivas como adjetivas que regían en esta jurisdicción con anterioridad a la ocupación americana, no se permitía dictar una nueva sentencia· individualmente contra los miembros de la sociedad en circunstancias análogas a las que concurren en el presente caso. El primer paso que se exigía a un demandante que obtuviese una sentencia contra una compañía de la índole de la que se describe en esta acción, era ejecutar la sentencia en cuanto fuera posible contra los bienes de la sociedad; y, una vez agotados éstos proceder, mediante ejecución, contra los bienes particulares de sus socios en virtud de la misma sentencia. No era preciso, ni tampoco se permitía, entablar nueva acción contra los que componían la razón social, individualmente, fundándola en la antigua sentencia, y obtener una nueva sentencia contra ellos. Desde la ocupación americana no se ha dictado ley alguna que haya alterado este procedimiento y esta es la práctica hoy vigente."

En el caso de *Hongkong & Shanghai Banking Corporation* v. *Aldecoa & Cía. en liquidación, Joaquín Ibáñez de Aldecoa & Co. en liquidación, Joaquín Ibáñez de Aldecoa y Palet, Zoilo Ibáñez de Aldecoa y Palet, Cecilia Ibáñez de*

*Aldecoa y Palet e Isabel Palet de Gabarro; William Urquhart,* tercerista y apelante, 30 Jurisprudencia Filipina 266, * * * se hace una breve reseña de la acción y de la sentencia en los dos primeros párrafos de la opinión, a saber:

"Promovióse esta acción en 31 de enero de 1911 por el banco demandante contra los referidos demandados al objeto de recobrar de la principal demandada, Aldecoa & Cía., cierta cantidad que ésta era en deber en su cuenta corriente con el demandante, y de hacer efectiva la responsabilidad subsidiaria de los otros demandados para que pagasen esta deuda como socios de Aldecoa & Cía., y para ejecutar ciertas hipotecas constituídas por los demandados en garantía de la deuda enjuiciada.

"Dictóse sentencia en 10 de agosto de 1912 a favor del demandante y en contra de los demandados por la cantidad de $344,924.23, con los intereses correspondientes a razón del 7 por ciento al año desde la fecha de la sentencia hasta su abono y las costas, y se ordenó la ejecución de las hipotecas. El juez declaró que en el caso de que no quedase cubierta dicha cantidad después de ejecutadas las hipotecas, el demandante debía recurrir a los bienes de la demandada principal hasta agotarlos antes de ejecutar a los demandados en particular a los cuales se había declarado responsables *in solidum* con la demandada principal, pero subsidiariamente. Dictóse asimismo sentencia denegatoria del remedio solicitado por el tercerista. Todos los demandados y el tercerista han apelado."

La corte al resolver la alegación de Aldecoa & Cía., se expresó en los siguientes términos:

"El banco no trata de ejecutar en la presente acción ninguna hipoteca sobre bienes otorgada por Aldecoa & Co. Es cierto que el banco trató de obtener y obtuvo sentencia por cantidad de pesos contra dicha razón social que al mismo tiempo y en la misma acción que obtuvo sentencia de ejecución obtuvo sentencia contra los demandados. Si dos o más personas son deudores *in solidum* de un tercerista y uno o más de dichos deudores constituyen hipoteca sobre sus respectivos bienes inmuebles situados en la jurisdicción del tribunal, el acreedor en el caso de que no se pague la obligación a su vencimiento podrá incluir en el mismo pleito a todos los deudores solidarios y obtener contra ellos una sentencia mancomunada y solidaria, así como también sentencias de ejecución sobre las respectivas hipotecas."

La apelante doña Isabel Palet uno de los miembros ''ge-
nerales o capitalistas de la compañía'' alegó como errores
entre otras cosas, ''que el Juzgado incurrió en error por no
haber considerado al negarse a ordenar a beneficio de esta
apelante, que el banco demandante debía dirigirse contra los
bienes de Aldecoa & Cía., antes de que aquél pudiera pro-
ceder contra los de esta demandada y apelante para el pago
de su sentencia.'' Tratando esta cuestión la corte dijo lo
siguiente:

''No pretende esta apelante que no sea personalmente respon-
sable solidariamente con Aldecoa & Cía de las obligaciones por esta
última contraídas con el demandante, en caso de que no prosperase
la apelación interpuesta por Aldecoa & Cía. Acabamos de declarar
que procede confirmar la sentencia apelada por Aldecoa y Cía.
Pero Isabel Palet pretende que su responsabilidad como socia en
orden a las obligaciones de Aldecoa y Cía., aunque solidaria, es sub-
sidiaria, y que tiene derecho a insistir en que se apliquen en pri-
mer término los bienes de Aldecoa & Cía. en su integridad al pago
de las obligaciones de la razón social antes de que el banco proceda
contra ella para ejecutar la sentencia.

''El juez sentenciador ordenó que los bienes hipotecados incluso
los que lo fueron por esta demandada, se vendieran en virtud de
ejecución en caso de que Aldecoa y Cía., dejase de depositar en el
juzgado el importe de la sentencia, dentro del plazo designado al
efecto. El juez reconoció el carácter subsidiario de la responsabili-
dad personal de Isabel Palet como socia de la casa Aldecoa y Cía., y
decretó que, en caso de que faltase alguna cantidad después de ven-
didos los bienes hipotecados, no se expidiese ejecución contra los
bienes de Isabel Palet hasta que se hubieran agotado todos los bie-
nes de Aldecoa y Cía. Las propiedades hipotecadas por Isabel Palet
lo habían sido no tan solo como garantías del cumplimiento de su
propia obligación solidaria y subsidiaria como socia que venía obli-
gada a responder de todas las deudas de Aldecoa y Cía., sino para
garantir la obligación directamente contraída por la casa con el
banco. Opinamos, por tanto, que el juez *a quo* no incurrió en error
en cuanto a este particular.''

Y al discutir otro señalamiento de error la corte vuelve
a hacer la siguiente indicación:

Isabel Palet es personalmente deudora en *mancomun et in so-lidum* con Aldecoa & Cía., de todo lo que la casa debe al banco, y no es meramente un fiador que garantiza el cumplimiento de las obligaciones de Aldecoa y Cía., sin ninguna responsabilidad solidaria."

Hacemos la siguiente cita de otra opinión en que se resuelve otro aspecto del mismo caso, a saber:

"La cuestión que se plantea es la siguiente: ¿Podía la madre de los tres menores, en virtud de los hechos que anteceden, hacerlos legalmente responsables como socios industriales de la razón social Aldecoa & Cía? En caso afirmativo, ¿son responsables mancomunada y solidariamente con todos sus bienes, tanto muebles como inmuebles de las deudas de la compañía? Que todos los socios industriales de una compañía mercantil regular colectiva son responsables, con todos sus bienes, tanto muebles como inmuebles, de todas las deudas que la compañía sea en deber a terceros, en las mismas condiciones que el socio capitalista, es cosa que hace mucho tiempo se ha resuelto definitivamente en esta jurisdicción, no obstante lo que dispongan en contrario las cláusulas de la escritura social." (*Compañía Marítima* contra *Muñoz*, 9 Jr. Fil. 336.)

Y más adelante en la misma opinión se expresa la corte en los siguientes términos:

"Se dice que la prohibición del artículo 164 abarca tan solo a los bienes inmuebles y que en su consecuencia, los hijos responden subsidiariamente, como socios industriales, hasta donde alcancen sus bienes muebles. Este principio se funda en la teoría de que la madre podía haber dispuesto libremente en 1896 de los bienes muebles de sus hijos, y que el único recurso que a éstos les quedaba era el de promover acción contra su madre para reclamar el valor de dichos bienes. Si esta teoría fuese cierta, no se alteraría en modo alguno el resultado, por razón de que los hijos fueran o no socios industriales. Si lo eran, tenían que responder de las deudas de la sociedad con todos sus bienes tanto muebles como inmuebles. Si no lo eran, no debían responder en manera alguna."

En el caso de *Compañía Marítima* v. *Muñoz*, que ha sido citado y observado en el caso mencionado en último término, en la página 348 el mismo tribunal dice lo siguiente:

"Al parecer el apelado dice en su alegato que no puede enta-

blarse una sola acción contra la sociedad y los socios individuales, basándose esta alegación en lo que dispone el artículo 237 del Código de Comercio que preceptúa que los bienes particulares de los socios no podrán ser ejecutados sino después de haber hecho excusión del haber social. Pero este artículo no apoya la alegación de los apelados. Puede entablarse acción contra la sociedad y los socios, pero la sentencia debe reconocer los derechos de los socios individuales, establecidos por dicho artículo 237.''

Y en el caso de *Sunico* v. *Chudium,* que aparece en el mismo tomo, páginas 648–49, se dice lo siguiente:

''En apoyo del primer motivo del recurso, así como del tercero, se dice que el apelado no tenía derecho a una sentencia en contra del apelante, uno de los miembros de la sociedad, en el mismo juicio o en los mismos autos en que había recaído sentencia contra la sociedad misma, porque según el artículo 237 del Código de Comercio, no podrán ser ejecutados los bienes particulares de los socios (de una compañía colectiva) sino después de haber hecho excusión del haber social.

''El artículo 127 del Código de Comercio dispone que:

'' 'Todos los socios que formen la compañía colectiva, sean o no gestores de la misma, estarán obligados *personal y solidariamente con todos sus bienes, a las resultas* de las operaciones que se hagan a nombre y por cuenta de la compañía. * * * ''

''Y el artículo 1144 del Código Civil dice que:

'' 'El acreedor puede dirigirse contra cualquiera de los deudores solidarios o contra ellos simultáneamente.''

''Estas disposiciones legales establecen claramente el derecho que tiene el acreedor de una compañía colectiva a dirigirse contra cualquiera de los socios individualmente y contra la sociedad al mismo tiempo; derecho éste del cual no le priva el artículo 237 del Código de Comercio porque los derechos por él garantidos pueden y deben ser puestos a salvo en la sentencia. (*La Compañía Marítima* v. *Muñoz*). En el caso de autos, lo dispuesto en la sentencia sobre suspensión de la ejecución de la sentencia del apelante, y el pago de ésta con la diferencia entre la participación que le corresponda en el producto de la liquidación del activo de la sociedad y la cantidad total por la cual se ha dictado sentencia en su favor y en contra de la sociedad, parece suministrar un medio eminentemente práctico de conservar los derechos de ambas partes y no debiera alterarse.''

El artículo 1111 de nuestro Código Civil prescribe lo siguiente:

"El acreedor puede dirigirse contra cualquiera de los deudores solidarios o contra todos ellos simultáneamente. Las reclamaciones entabladas contra uno no será obstáculo para los que posteriormente se dirijan contra los demás mientras no resulte cobrada la deuda por completo."

La sentencia apelada, en tanto por ella se niega el derecho de la demandante a recobrar del demandado Miguel Martorell en la presente acción el importe de la deuda de la compañía sujeta solamente a las debidas condiciones en cuanto al orden y forma y manera de ejecución debe ser revocada y en su lugar dictarse otra sentencia por este tribunal con los pronunciamientos que indica la súplica de la demanda a favor del demandante y en contra de dicho socio demandado.

> *Revocada la sentencia en la parte que lo ha sido o sea en cuanto no condena al demandado Martorell en su carácter de socio colectivo a pagar solidariamente la suma reclamada y las responsabilidades a que fué condenada la sociedad, pues sobre ello se condena al demandado como tal socio a pagar solidariamente a la demandante la suma de $2,589.65 e intereses, con costas, gastos y honorarios de abogado, entendiéndose que se hará efectiva en bienes de M. Martorell después de la excusión del haber social de Torrens, Martorell & Cía.; quedando subsistente la misma sentencia en cuanto a la sociedad demandada, que no apeló contra ella.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados del Toro y Aldrey.

El Juez Asociado Sr. Wolf disintió.