CHARLES LLENZA, demandante y recurrido, *v.* BANCO DE PONCE, JOSÉ MOLINA, MANUELA NIEVES DE MOLINA ET AL., demandados y recurrentes los tres primeros; EL ESTADO LIBRE ASOCIADO DE PUERTO RICO, interventor y recurrido.

*Número:* 12532      *Resuelto:* 26 de junio de 1962

*L. E. Dubón, A. Torres Braschi* y *R. Ruiz Sánchez,* abogados de los recurrentes; *Harry B. Llenza* y *Domingo Toledo Álamo,* abogados del recurrido; *Hiram R. Cancio, Secretario de Justicia, Arturo Estrella, Secretario Auxiliar* y *Stanley R. Segal, Procurador Auxiliar,* abogados del interventor.

Sala integrada por el Juez Asociado señor Belaval como Presidente de Sala y los Jueces Asociados señores Hernández Matos y Santana Becerra.

EL JUEZ ASOCIADO SEÑOR SANTANA BECERRA emitió la opinión del Tribunal.

Por escritura Núm. 35 otorgada en Río Piedras el 5 de marzo de 1948 ante el Notario Edrulfo Astacio, los socios Miguel Angel Dávila, Charles Llenza y Juan R. Dávila disolvieron la Sociedad Mercantil colectiva "Dávila & Llenza." Entre las cláusulas de disolución se acordó la siguiente:

"OCTAVA.—Habida cuenta de que los comparecientes DON MIGUEL ANGEL DÁVILA y DON JUAN R. DÁVILA han asumido la obligación de pagar totalmente las deudas y obligaciones que constituyen el pasivo de la Mercantil DÁVILA & LLENZA, exonerando y liberando a DON CHARLES LLENZA, de su pago total o

parcial con excepción de los DIEZMIL DÓLARES ($10,000.00) del capital e intereses a partir de enero treinta y uno del año en curso, del crédito hipotecario de don Celso J. Ortiz y que grava el edificio de dos plantas de la Calle Arsuaga de Río Piedras, adjudicado a DON CHARLES LLENZA y que éste asume la obligación de pagar y con excepción además de los gastos de comisiones y honorarios y gastos judiciales que haya que satisfacer en el cobro de las cuentas por cobrar contabilizadas y sin contabilizar en la forma y con las limitaciones impuestas y convenidas precedentemente, es convenio entre los comparecientes a los solos efectos de garantizar a DON CHARLES LLENZA el pago de tales deudas y obligaciones, que los SIETE solares de la Urbanización DÁVILA Y LLENZA, descritos bajo las letras B, C, D, E, F, G e I en el párrafo segundo del expositivo de esta escritura, quedarán afectos al pago del importe de la tercera parte de las deudas y pasivo de la Mercantil DÁVILA & LLENZA, permaneciendo así como una garantía colateral la que subsistirá hasta tanto se pague a los acreedores o hasta tanto dichos acreedores acepten cualquier otra garantía de DON MIGUEL ANGEL DÁVILA y DON JUAN R. DÁVILA.  Es expresamente convenido, sin embargo, que la garantía anteriormente estipulada sobre los solares del párrafo SEGUNDO expositivo de esta escritura, no constituirá un gravamen real sobre dichos solares, de manera que los señores DON MIGUEL ANGEL DÁVILA y DON JUAN R. DÁVILA pueden vender, ceder y traspasar dichos solares o cualquiera de ellos libre de gravámenes, y darlos en garantía directa o colateral a instituciones bancarias, siempre que el producto de la operación que realicen garanticen proporcionalmente a DON CHARLES LLENZA el pago de las deudas y obligaciones a que se refiere esta cláusula, todo ello en el entendido de que para vender, gravar o hipotecar estos solares será necesario el consentimiento de DON CHARLES LLENZA en la escritura de venta o hipoteca limitando ese consentimiento a conseguir que el producto de la venta e hipoteca se invierta sola y exclusivamente en el pago de las deudas relacionadas precedentemente, conviniéndose además que una vez satisfechas dichas deudas no será necesario dicho consentimiento."

Según antecedentes en la escritura, los 7 solares mencionados en la cláusula anterior se adjudicaron a los socios Miguel Angel Dávila y Juan R. Dávila, junto con otros activos,

en común proindiviso y en proporción de una mitad para cada uno de ellos. Se hizo constar que cualquier deficiencia que apareciera en la declaración de contribución sobre ingresos de la mercantil del año 1946 sería prorrateada por partes iguales entre los socios en el momento en que hubiera que pagar tal deficiencia, y lo mismo se acordó en cuanto a la planilla del año 1947 y hasta el 31 de enero de 1948. Se expuso que en el pasivo de la sociedad al liquidarse se habían hecho reservas por $22,060.61 para el pago de deficiencias reclamadas por concepto de contribuciones sobre ingresos de los años 1940 al 1945, entendiéndose que de tener que ser pagadas dichas deficiencias el importe total sería por cuenta de los socios Miguel Angel Dávila y Angel R. Dávila mancomunada y solidariamente sin que el socio Charles Llenza tuviera que contribuir a su pago, considerando las reservas hechas.

Cinco de los siete solares mencionados en la cláusula octava anterior, los cuales son objeto de este pleito, son los solares números 17, 18, 19, 31 y 38 de la urbanización "Dávila y Llenza" del barrio de Hato Rey. Según la escritura de disolución y el historial del Registro, estos solares se segregaron de la finca Núm. 69 compuesta de 43,199 metros 17 centímetros cuadrados sita en el barrio de Hato Rey, afecta a mención de servidumbre de manantial u ojo de agua y a condiciones restrictivas sobre edificación. En su primera inscripción los cinco solares aparecen inscritos en común proindiviso, y en una mitad para cada uno de ellos, a favor de Miguel Angel Dávila y Juan R. Dávila a título de adjudicación en disolución de sociedad. Se hizo constar en dicha primera inscripción que la adjudicación se hacía "con las condiciones que constan de la escritura número treinta y cinco, otorgada en Río Piedras, el cinco de marzo de mil novecientos cuarenta y ocho, ante el Notario Edrulfo Astacio; extensamente relacionada en la inscripción sexta, de la finca siete mil ciento once, al folio ciento sesenta del tomo ciento noventa y cinco de Río Piedras."

Por su segunda inscripción estos solares se inscribieron a título de venta judicial a favor de José Molina casado con Manuela Nieves como adjudicatario en subasta, haciéndose constar en dicha inscripción que los mismos estaban afectos a mención de servidumbre de manantial u ojo de agua y condiciones restrictivas sobre edificación, y a ciertos embargos anotados. En cuanto a los solares 19, 31 y 38, con fecha 21 de junio de 1950 se anotó en el Registro embargo a favor de El Pueblo de Puerto Rico para responder de contribuciones sobre ingresos desde el año 1940 hasta el 1948, habiendo inscrito José Molina sujeto a dichos embargos. En 16 de septiembre de 1954 los referidos embargos por contribuciones sobre ingresos quedaron totalmente cancelados por haber transcurrido más de 4 años desde que se verificó la anotación, y solicitarlo así el actual dueño.

La finca Núm. 7,111 mencionada en las inscripciones primeras de los cinco solares en relación a las condiciones, no está relacionada con la Núm. 69 de donde éstos procedieron. Es un edificio con su solar de seis plantas sito en la Calle Georgetti de Río Piedras. La inscripción sexta de dicha finca, en la parte pertinente dice así:

"La Sociedad Mercantil, Regular, Colectiva, 'Dávila y Llenza', domiciliada en Río Piedras, es dueña de esta finca según la inscripción tercera, y por escritura número treinticinco, otorgada en Río Piedras, el cinco de marzo de mil novecientos cuarentiocho, ante el notario Edrulfo Astacio, Miguel Angel Dávila, Charles Llenza y Juan R. Dávila, mayores de edad, casados, sin que se exprese con quien, Ingenieros Civiles y vecinos de Río Piedras, como únicos componentes de la Soeiedad Mercantil 'Dávila y Llenza', y como gestores de la misma, procedieron a su liquidación y disolución, resultando de dicho documento que practicada una liquidación de los bienes, la misma arrojó un activo de cuatrocientos nueve mil seiscientos veintiséis dólares veintiséis centavos, y un pasivo de doscientos cuarentiocho mil trescientos sesenticuatro dólares con setenta centavos. El capital ascendió a ciento sesentiun mil trescientos veintiun dólares cincuentiséis centavos, repartidos en la proporción de cin-

cuentisiete mil trescientos sesentisiete dólares setenta centavos para el socio Miguel Angel Dávila, cincuenticuatro mil seiscientos ochentisiete dólares ochenta centavos, para el socio Juan R. Dávila y cuarentinueve mil doscientos sesentiséis dólares ocho centavos, para el socio Charles Llenza.—En la escritura que motiva la presente se adjudicó la finca de este número a los socios Miguel Angel Dávila y Juan R. Dávila, mayores de edad casados sin que conste con quien, Ingenieros Civiles y vecinos de Río Piedras, en común proindiviso y en proporción de una mitad para cada uno, con un valor de noventa mil quinientos ochentiun dólares con tres centavos.—Es entendido y convenido entre los comparecientes que los créditos hipotecarios y garantías colaterales que gravan y afectan los bienes adjudicados serán asumidos, satisfechos y pagados individualmente por el socio a quien la propiedad así gravada le hubiere sido adjudicada. Es convenido entre los comparecientes *a los solos efectos de garantizar a Charles Llenza, el pago de deudas y obligaciones* que los seis solares de la Urbanización Dávila y Llenza, descritos en el párrafo segundo de la escritura que se inscribe, bajo las letras "B", "C", "D", "F", "G" e "I", quedarán afectos al pago del importe *de la tercera parte de las deudas y pasivo de la Mercantil Dávila y Llenza,* permaneciendo así como una garantía colateral la que subsistirá hasta tanto se pague a los acreedores o hasta tanto dichos acreedores acepten cualquier otra garantía, de Miguel Angel Dávila y Juan R. Dávila. Es expresamente convenido sin embargo, que la garantía anteriormente estipulada sobre los solares del párrafo segundo expositivo de la escritura, no constituirá un gravámen real para dichos solares, de manera que los señores Miguel Angel Dávila y Juan R. Dávila, pueden vender, ceder y traspasar dichos solares o cualquiera de ellos libre de gravámenes y darlos en garantía directa o colateral a instituciones bancarias, siempre que el producto de la operación que realicen garanticen proporcionalmente a Charles el pago de las deudas y obligaciones a que se refiere la cláusula, todo ello en el entendido de que para vender, gravar e hipotecar estos solares será necesario el consentimiento de Charles Llenza en la escritura de venta o hipoteca limitando ese consentimiento de conseguir que el producto de la venta e hipoteca se invierta sola y exclusivamente en el pago de las deudas relacionadas precedentemente, conviniéndose además que una vez satisfechas dichas deudas no será

necesario dicho consentimiento.—En su virtud, inscribo a favor de Miguel Angel Dávila y Juan R. Dávila, la finca de este número, por partes iguales, por adjudicación en disolución de Sociedad Mercantil, con el defecto subsanable de no darse los nombres de esposas de adjudicatarios.—" (Énfasis suplido.)

Aparece anotado al margen de esta inscripción un embargo a favor de El Pueblo de Puerto Rico para el pago de $12,585.96 adeudados de contribuciones sobre ingresos impuestas para los años 1940-45 y 1947-48 en cuanto a la participación de Juan R. Dávila. Esta anotación tiene fecha de 21 de marzo de 1952. En 26 de marzo de 1954 dicho embargo fue cancelado según inscripción 10a. Hay otra nota al margen de la inscripción octava al efecto de que el convenio relacionado en la inscripción 6ta. no aparecía renunciado, modificado ni limitado al 9 de abril de 1956.

En pleito en cobro de dinero interpuesto en la Sala de Ponce del Tribunal Superior, Núm. TS-52-378 por el Banco de Ponce, demandante, contra Georgina Tirado Vda. de Dávila, Juan R. Dávila, Margarita Príncipe, Dávila y Dávila, Inc. y la Sucn. de Miguel A. Dávila, se dictó sentencia en rebeldía en 18 de mayo de 1953, que fue firme, ordenando a dichos demandados a satisfacer determinadas sumas al Banco demandante. La acción se basó en 22 pagarés, algunos de ellos garantizados con hipoteca, unos al portador y otros a la orden del Banco, que eran obligaciones de esos demandados incurridas con posterioridad a la disolución de la sociedad Dávila y Llenza, no provenían de las operaciones de dicha mercantil, y las garantías hipotecarias no incluyeron ninguno de los cinco solares envueltos en el caso ante nos. En 15 de julio de 1953 se dictó orden de ejecución de sentencia sobre todos los bienes de los demandados en aquel pleito. Dicha orden de venta y ejecución dispuso así en cuanto a los bienes que no constituían garantía hipotecaria de los pagarés: "SE ORDENA POR ULTIMO, la venta y ejecución de cualesquiera otros bienes de los demandados, excepto Commercial Acceptance Corporation, hasta dejar cubierta y

totalmente pagada al demandante cualquier deficiencia o parte insoluta de la Sentencia dictada a su favor por las cantidades que se mencionan en el primer POR CUANTO anterior."

En consecuencia de esa orden, el 14 de septiembre se vendieron en subasta, entre otras propiedades, los cinco solares en litigio que fueron adjudicados a José Molina, otorgándose luego en 21 de octubre de 1953 la correspondiente escritura de venta judicial. Molina inscribió su título, en la forma que describimos anteriormente, en 13 de julio de 1954.

En diciembre 22 de 1955 Charles Llenza interpuso este pleito contra el Banco de Ponce, José Molina, Manuela Nieves de Molina, Juan R. Dávila, Margarita Príncipe, Georgina Tirado, y la Sucn. de Miguel A. Dávila compuesta por Georgina Tirado, Miguel A. Dávila Tirado y José Juan Dávila Tirado, solicitando los siguientes pronunciamientos judiciales:

(a) Resolviendo que los procedimientos, ejecución y demás actuaciones en el caso TS–52–378 de la Sala de Ponce antes mencionado, incluyendo la escritura de venta judicial y su inscripción en el Registro, son nulos en cuanto concierne a los cinco solares aquí envueltos por no haberse incluido al demandante Llenza como parte demandada en dichos procedimientos ni habérsele notificado de la subasta, y ordenando la cancelación de las correspondientes inscripciones;

(b) Resolviendo, en la alternativa, que la condición y reserva en la escritura de disolución de sociedad constituyen una condición resolutoria que fue hecha constar explícitamente en el Registro de la Propiedad y perjudicaba a tercero, decretándose, en su consecuencia, que las actuaciones judiciales habidas en el caso TS–52–378 no podían afectar los derechos del interesado en dicha condición, y que por lo tanto debe resolverse la compraventa judicial y cancelarse la inscripción de la misma en el Registro en cuanto a los mencionados solares;

(c) Resolviendo, si el Tribunal estimare que no procede ninguno de los pronunciamientos que anteceden, que los mencionados cinco solares se hallan afectos a la mencionada condición y por lo tanto al pago de una tercera parte de una deuda por contribuciones sobre ingresos, intereses y recargos a favor del Estado Libre Asociado de Puerto Rico, y ordenándose al Registrador que haga constar al margen de las inscripciones hechas a favor del adjudicatario en subasta, el demandado Molina, que dichos cinco solares se hallan afectos a la condición mencionada.

El Estado Libre Asociado de Puerto Rico solicitó y obtuvo intervención en el pleito por una deuda contributiva de la disuelta sociedad. Interpuso su demanda, y por estipulación se adhirió además a las alegaciones de la demanda original por ser comunes con las suyas, y solicitó sentencia con los siguientes pronunciamientos:

"(a) Declarando nulos los procedimientos del caso TS–52–378 incluyendo la escritura de venta judicial y su inscripción;

"(b) Que los referidos solares sean restituidos a los demandados Juan R. Dávila y Sucn. de Miguel A. Dávila quedando sujetos los mismos a la condición resolutoria a favor del demandante Charles Llenza; y

"(c) Que en caso de no proceder los anteriores pronunciamientos el Tribunal decrete que dichas fincas son propiedad de Molina, pero afectas a una deuda contributiva de la sociedad Dávila y Llenza y de sus exsocios Charles Llenza, Juan R. Dávila y Miguel A. Dávila, hoy su Sucesión, cuya deuda ascendía al 31 de marzo de 1956 a $23,010.54, con más los intereses y recargos hasta el total pago."

Fue la posición del Estado Libre Asociado en sus alegaciones, que estos solares respondían no de una tercera parte de la deuda contributiva como se alegó en la demanda original, sino de la totalidad, a base de que todos los tres exsocios de la mercantil respondían solidariamente de dicha deuda.

En la demanda de Llenza se alegó que a la fecha de la misma la única deuda existente de la disuelta sociedad

era una de contribuciones sobre ingresos en la suma de $22,647.96; que el exsocio Juan R. Dávila y los herederos del exsocio fallecido estaban en estado de insolvencia y el demandante quedaba expuesto a que sus bienes fueran embargados por el Secretario de Hacienda por la mencionada deuda. En una alegación suplementaria fechada 21 de junio de 1957 el demandante expuso que el Secretario de Hacienda había anotado en 15 de mayo de 1956 embargos sobre dos fincas de su pertenencia por la suma de $23,010.54 de contribuciones sobre ingresos de la sociedad disuelta.

Sólo se defendieron el Banco de Ponce y los esposos Molina. Éstos negaron las alegaciones esenciales, levantaron ciertas defensas especiales y pidieron que se desestimara la demanda de intervención del Estado Libre Asociado por falta de causa, aunque luego la sometieron sujeto a las mismas objeciones hechas a la demanda original, y por la misma prueba. Se estipuló someter el caso a base de las alegaciones y de la prueba documental.

Con los hechos que se han expuesto ante sí, la Sala sentenciadora dictó sentencia con los siguientes pronunciamientos:

"1ro. Se resuelve que son nulas las actuaciones habidas en el caso civil número TS–52–378 del Tribunal Superior de Puerto Rico, Sala de Ponce, seguido por el Banco de Ponce contra Georgina Tirado viuda de Dávila, Juan R. Dávila, Margarita Príncipe, Dávila & Dávila, Inc., y la Sucesión de Miguel A. Dávila, compuesta de su viuda Georgina Tirado y de sus hijos legítimos José Juan y Miguel Angel Dávila Tirado, en cuanto concierne a los cinco solares que son objeto del presente pleito y que se han descrito ampliamente en la Conclusión de Hechos Núm. 8, y que son de igual modo nulas la subasta en que dichos solares fueron vendidos, la escritura de venta judicial y las inscripciones que ésta produjo en el Registro de la Propiedad en cuanto a los cinco solares antes referidos.

"2do. Se condena a los demandados José Molina y Manuela Nieves de Molina a restituir dichos solares a Juan R. Dávila, casado con Margarita Príncipe, y a Miguel Angel Dávila (hoy su Sucesión), casado con Georgina Tirado, de modo que se restablezca en cuanto a dichas fincas el estado de derecho que existía cuando el Banco de Ponce inició su mencionada acción judicial sobre cobro de dinero.

"3ra. Se ordena la cancelación en el Registro de la Propiedad de Puerto Rico, Sección Segunda de San Juan, de las inscripciones de dichas fincas efectuadas a favor de José Molina, casado con Manuela Nieves, de acuerdo con la escritura de venta judicial que se ha mencionado en la Conclusión de Hecho Número 21 que antecede, o sea, la escritura número 87 otorgada en San Juan el día 21 de octubre de 1953 ante el Notario Luis Ríos Algarín, a saber: de la inscripción segunda de las fincas números 718, 719, 720, 722 y 723, practicadas a los folios 141 vuelto, 146 vuelto, 153 vuelto, 165 vuelto y 171 vuelto del tomo 247 de Río Piedras.

"4to. Se ordena que se restablezca en el mencionado Registro de la Propiedad el estado de derecho que existía en cuanto a las referidas fincas a la fecha en que el Banco de Ponce inició su citada acción en Cobro de Dinero, y a tal efecto ordena que todos y cada uno de los cinco solares descritos en la Conclusión de Hecho Número 8 que antecede sean nuevamente inscritos a favor de Juan R. Dávila y Miguel Angel Dávila, en común proindiviso y por partes iguales, expresándose en las nuevas inscripciones las mismas circunstancias personales y la misma valoración que constan en la inscripción primera de cada uno de dichos inmuebles, y expresándose además que los mismos se inscriben sujetos al convenio sobre pago de deuda de la disuelta sociedad "Dávila y Llenza" que consta en la cláusula Octava del hecho Cuarto de la escritura número 33, sobre Liquidación y Disolución de Sociedad, otorgada en Río Piedras el día 5 de marzo de 1948 ante el Notario Edrulfo Astacio (Conclusión de Hecho Número 3 que antecede), relacionado extensamente en la ins-

cripción 6a. de la finca número 7111, al folio 160 del tomo 195 de Río Piedras (Conclusión de Hecho Número 4 que antecede).

"5to. Se condena a los codemandados Banco de Ponce, José Molina y Manuela Nieves de Molina a pagar solidariamente al demandante Charles Llenza el importe de los sellos de Rentas Internas y demás gastos que originen las operaciones registrales que se ordenan en los pronunciamientos Tercero y Cuarto que anteceden.

"6to. Se ordena a los codemandados Juan R. Dávila, Margarita Príncipe, Georgina viuda de Dávila, y Sucesión de Miguel Angel Dávila compuesta de Georgina Tirado Vda. de Dávila y de Miguel Angel y Juan José Dávila Tirado, que cumplan el convenio sobre el pago de deudas de la disuelta sociedad "Dávila y Llenza" antes referido, y que proporcionen y otorguen los documentos públicos o privados necesarios y soliciten y obtengan las inscripciones registrales que exija el adecuado cumplimiento de dicho convenio.

"7mo. Se le imponen las costas a los demandados más el pago de $1,300.00 de honorarios de abogado.

"En vista de los pronunciamientos que aquí hacemos es innecesario proveer en cuanto a las solicitudes de remedios alternativos formuladas en sus demandas por el demandante Charles Llenza y por el Interventor."

Los anteriores pronunciamientos responden esencialmente, entre muchas otras, a estas conclusiones de derecho de la Sala sentenciadora, particularmente las números (18) y (19):

"14—Los cinco solares del presente litigio constituían un patrimonio especial, dotado de órganos de disposición y caracterizado por su finalidad fiduciaria; los adjudicatarios, señores Dávila, no podían atribuirse un dominio absoluto sobre los mismos, ya que dichos bienes les fueron transferidos con las limitaciones de que habían de servir exclusivamente para el pago de las deudas sociales y de que el consentimiento de Charles Llenza sería necesario en cualquier contrato de venta, gravamen

o hipoteca que se efectuase; los adjudicatarios tenían más bien el carácter de fiduciarios, y resultando claramente del Registro esta disposición especial de los bienes y la referida relación fiduciaria, las mismas no podían dejarse sin efecto sin oir y vencer en juicio a las partes interesadas (Resoluciones de 29 de mayo de 1921 y de 14 de junio de 1922, y Sentencia del Tribunal Supremo de España de 23 de mayo de 1935, 219 Jurisprudencia Civil 161, Mayo y Junio de 1935, Editorial Reus, Madrid).

"15—La circunstancia de que el Banco de Ponce fuese un acreedor de los señores Dávila y demandase a éstos en ejecución de hipoteca o en cobro de dinero, no surte el efecto de que la situación de dicho Banco sea superior a la de cualquier otra persona que hubiese contratado directamente con los señores Dávila comprando los solares o adquiriendo algún derecho real sobre los mismos en violación del convenio relativo al pago de las deudas sociales, ya que "los títulos inscritos surtirán su efecto aun contra los acreedores singularmente privilegiados por la legislación común (Art. 24, Ley Hipotecaria). El Banco no gozaba de ninguna preferencia sobre los cinco solares de este litigio. Por el contrario, la disposición especial de los bienes y la limitación de su dominio en beneficio de Charles Llenza y de los acreedores sociales, constaban inscritos con anterioridad a la fecha del más antiguo pagaré ejecutado por el Banco. A éste y a José Molina les perjudicó dicha inscripción, y no pueden alegar la calidad de terceros inmunes.

"16—El hecho de que los solares fuesen vendidos en subasta judicial, y no en venta voluntaria otorgada por los fiduciarios señores Dávila, tampoco altera la situación de las partes. Dichos bienes fueron vendidos por el Alguacil del Tribunal Superior, Sala de San Juan, a instancias del Banco de Ponce, en virtud de una escritura de venta judicial en la que compareció dicho funcionario en su carácter de Alguacil y a nombre y en representación de Juan R. Dávila y su esposa Margarita Príncipe, de Georgina Tirado viuda de Dávila y de la Sucesión de Miguel Angel Dávila, Etc., y una escritura de compraventa otorgada por la Autoridad Judicial no confiere al comprador privilegios o facultades que exceden de las comunes u ordinarias a todo contrato de compraventa (Sentencia del Tribunal Supremo de España de 26 de diciembre de 1910). Al adquirente en la venta judicial no pueden transmitirse más derechos que los que tenga inscritos el demandado en el juicio, a cuyo nombre

se efectúa la venta (Resolución de 13 de julio de 1933, 210 Jurisprudencia Civil 259, julio a octubre de 1933, Editorial Reus, Madrid, y Resolución de 11 de octubre de 1920). El Alguacil no pudo transmitir en este caso al adjudicatario en la subasta, José Molina, ningún título o interés en los bienes, superiores a los que pudieron haber transmitido los demandados Dávila actuando personal y voluntariamente.

"18—El Tribunal Superior de Puerto Rico, Sala de Ponce, actuó sin jurisdicción en cuanto a los cinco solares del presente litigio en el referido caso civil número TS–52–378. Dichos solares fueron vendidos por el Alguacil 'sin reserva ni limitación de clase alguna', extinguiendo en el Registro de la Propiedad derechos inscritos en los cuales tenían interés personas o entidades que no fueron incluidas como partes demandadas, que no fueron citadas en forma alguna y que no tuvieron su día en corte. La disposición especial a que se hallaban sujetos los bienes, y la evidente relación fiduciaria, fueron de igual modo ignoradas. (Todo indica, sin embargo, que de la prueba documental que fue presentada en la Sala de Ponce en el caso referido no surgía la existencia de los derechos que a nuestro juicio fueron ignorados.)

"19—El demandante Charles Llenza sufrió perjuicios, y tiene interés y causa de acción para pedir la nulidad de actuaciones a que se refiere el presente caso. El se privó de una tercera parte del valor de los solares al depositar en poder de los señores Dávila, en bienes, el importe de las deudas y obligaciones de la disuelta compañía (Art. 154, Código de Comercio, ed. de 1932), y si dichas deudas y obligaciones no fueren pagadas en la forma prevista, los bienes particulares de Charles Llenza podrían ser embargados y ejecutados por los acreedores de la disuelta sociedad en virtud del principio de la responsabilidad solidaria que es aplicable a los socios colectivos de una compañía mercantil (Art. 104, Código de Comercio, ed. de 1932), y como cuestión de hecho algunos bienes de dicho demandante han sido embargados ya por el Secretario de Hacienda con tales fines. El Interventor, Estado Libre Asociado de Puerto Rico, tiene de igual modo interés y causa de acción para pedir la referida nulidad de actuaciones en virtud de la relación fiduciaria establecida en su favor y en virtud de su crédito por concepto de 'income tax'.

"20—En vista de las conclusiones que anteceden, son nulas las actuaciones de la Sala de Ponce en el referido caso civil número TS–52–378 en cuanto concierne a los cinco solares objeto del presente litigio, y son nulas la subasta, la adjudicación, la escritura de venta judicial y las inscripciones que ésta causó en el Registro de la Propiedad, todo ello en cuanto se relaciona con las mencionadas fincas."

No obstante la amplitud de los remedios solicitados y concedidos, las cuestiones litigiosas suscitadas y discutidas con sus francas complejidades en ley, que a la vez motivaron extensas conclusiones de derecho de la Sala de instancia, en el fondo la razón de ser de este pleito se reduce a un mínimo, según los hechos en el récord:—que existía una única deuda no satisfecha de la disuelta sociedad mercantil colectiva Dávila y Llenza, consistente de unas contribuciones sobre ingresos, y el demandante Llenza quedaba expuesto a responder de dicha deuda en una tercera parte adicional, de no concederse los remedios judiciales solicitados. Reducido el pleito a su expresión verdadera, así pasaremos a resolverlo en este recurso. Conviene dejar sentado que los Dávila no realizaron acto alguno en violación de la cláusula Octava de disolución que quedó transcrita al principio. No vendieron, cedieron o traspasaron la propiedad, ni la dieron en garantía colateral, o la gravaron o hipotecaron a espaldas o sin el consentimiento del demandante Llenza. La contienda de éste surge con terceras personas que no fueron partes en el otorgamiento de dicha cláusula. ■

Dispondremos en primer lugar de la demanda de intervención del Gobierno. En su cuarto señalamiento alegan los demandados recurrentes que la Sala cometió error al negarse a desestimar dicha demanda de intervención. Tienen razón ellos. La demanda de intervención debió haberse desestimado como cuestión de derecho. Descansando como descansaba en la referida cláusula Octava, el Gobierno por su propio derecho como acreedor, y ningún acreedor, tenía causa de acción directamente contra el adjudicatario en la subasta

que adquirió título sobre los bienes. Es así porque dicha cláusula no garantizaba a los acreedores de la sociedad ni las deudas. Concediéndole el más amplio efecto posible, y aparte de consideraciones del tercero hipotecario que pudieran estar presentes, la cláusula Octava la otorgaron unos socios para *garantizar a otro socio* (no para beneficio de acreedores) en el descargo de la obligación de pagar las deudas sociales dentro de la particular manera en que acordaron repartirse el activo y el pasivo. El hecho de que esta cláusula era para garantía del socio aquí demandante surge explícitamente del Registro en cuanto a terceros se refiere, de la inscripción en extenso de las condiciones hecha en la inscripción sexta de la finca 7,111, cuya inscripción transcribimos antes. ■

El derecho de los acreedores, en este caso del Gobierno, nace del artículo 104 del Código de Comercio, ed. 1932, y así se garantiza, que impone a todos los socios de una compañía mercantil colectiva la obligación de responder *solidariamente* con todos sus bienes, de las deudas de la sociedad. Si bien los socios pueden pactar entre sí para tener efecto entre ellos en cuanto al descargo de tal obligación, por lo que no podría decirse que la cláusula Octava resulta contraria a derecho, no pueden ellos, sin embargo, pactar en contrario a lo dispuesto en el artículo 104 en lo que a acreedores y terceros se refiere, por ser esa una obligación que surge de la ley. Véase el artículo 104 del Código Civil, ed. 1930. Recientemente tuvimos oportunidad de discutir esta responsabilidad solidaria de los socios de una compañía mercantil colectiva en el caso de *Vázquez* v. *H. Sánchez, S. en C.*, 85 D.P.R. 565 (1962). No es necesario que volvamos aquí en detalle sobre el tema. ■

Por razón de ley responde *solidariamente* al Estado de la deuda contributiva el demandante Llenza, y también los otros exsocios. Ninguna obligación en ley tiene el adjudicatario en subasta y actual dueño de la propiedad de responder

por esta deuda, a menos que el gobierno hubiera anotado embargo sobre los bienes subastados. [1]   Según los hechos en el récord, como cuestión de realidad el Gobierno anotó embargo por la referida deuda con anterioridad a la venta judicial sobre 3 de los 5 solares adquiridos por Molina.   La orden judicial de venta no dictaminó en contra de dichas cargas, y Molina inscribió su título sujeto a las mismas.   De esta manera hubiera respondido, pero los embargos se cancelaron por caducidad sin ejecutarse sobre los bienes anotados y la propiedad quedó libre de dicha carga.   Ante los hechos en el récord el Interventor no tenía en ley causa de acción para ninguno de los pronunciamientos que solicitó contra el adjudicatorio en subasta:- él no derivaba derechos del *"pactum fiduciae"* de los socios; no era un acreedor posterior según el Registro y la orden judicial de venta tampoco le privó de los derechos de embargo que tenía anotados.   Y de haber habido violación del pacto fiduciario de la cláusula Octava, en todo caso la causa de acción para resolver se la confería el Art. 1077 del Código Civil, ed. 1930, al demandante Llenza como fideicomitente o el acreedor de dicho pacto. [2]   La moción para que se desestimara la demanda del Interventor por falta de causa debió declararse con lugar.   ■

---

[1] De acuerdo con la Sección 83 de la Ley de Contribuciones sobre Ingresos de 1924, estas contribuciones sobre ingresos constituyen un crédito preferente a favor del Estado sobre la propiedad del contribuyente desde la fecha de la publicación de tal contribución en la oficina del Colector de Rentas Internas y se cobran por el mismo procedimiento de apremio para el cobro de contribuciones sobre la propiedad.   La Ley 14 de 24 de agosto de 1933 según ha sido enmendada dispone en su Sección 5 que las contribuciones sobre ingresos se cobrarán por el procedimiento de apremio para la contribución sobre la propiedad, pero el embargo que se practique tendrá preferencia desde la fecha de su inscripción en el Registro y únicamente sobre gravámenes y cargas posteriores a dicha fecha.   Véase la Sección 423 (a) (2) de la Ley 91 de junio 29 de 1954.

[2] "La facultad de resolver las obligaciones se entiende implícita en las recíprocas, para el caso de que uno de los obligados no cumpliere lo que le incumbe.

"El perjudicado podrá escoger entre exigir el cumplimiento o la resolución de la obligación, con el resarcimiento de daños y abono de intereses

Pasemos a la demanda original. Lo anteriormente expuesto dispone en gran parte de ella también. A tenor de los hechos en el récord, no se sostiene el pronunciamiento que declaró nulas las actuaciones del caso TS–52–378 de Ponce y las resultantes inscripciones en el Registro. No hay razón de ley para que el demandante Llenza fuera parte a ser oída en aquel pleito o a ser personalmente notificado de la subasta, pleito que nada tenía que ver con obligaciones derivadas de la disuelta sociedad ni con las propiedades objeto de la cláusula Octava. Como consecuencia de la orden judicial de venta se alcanzaron dichas propiedades en la ejecución de la sentencia, pero la orden de venta nada dispuso contra los derechos que pudiera tener Llenza derivados del pacto fiduciario, y nada dispuso en contra de la inscripción en el Registro en la finca 7,111 o en éstas, de tales derechos a tenor de las condiciones de disolución, cualquiera que pudiera ser la esencia y naturaleza de dicha inscripción, o sus efectos, en cuanto a tercero respecta. [3] En este sentido no se ha imputado ni probado que el pleito de Ponce se debió a colusión, confabulación o fraude entre el fiduciario, los exsocios Dávila, y el Banco allí demandante, para perjudicar al fideicomitente Llenza. [4]

---

en ambos casos. También podrá pedir la resolución, aún después de haber optado por el cumplimiento, cuando éste resultare imposible.

"El tribunal decretará la resolución que se reclame, a no haber causas justificadas que le autoricen para señalar plazo.

"Esto se entiende sin perjuicio de los derechos de terceros adquirentes, con arreglo a los artículos 1247 y 1250 y las disposiciones de la ley hipotecaria."

[3] Tan no afectó la venta la inscripción en que Llenza era parte interesada hecha con anterioridad a los procedimientos de ejecución y a la inscripción del título del adquirente en subasta, que el propio demandante aportó prueba, —una certificación del Registro, —de donde aparece que al 9 de abril de 1956, fecha en que fue expedida, dicha inscripción estaba vigente. Llenza tampoco ocupaba la posición de un acreedor posterior en cuanto a las hipotecas que se ejecutaron en dicho pleito TS–52–378. Arts. 125 Ley Hipotecaria; 132(3), 171, 174, del Reglamento.

[4] La demanda del Banco de Ponce reclamó una cuantiosa suma y se dictó sentencia por más de $348,000.

Los demás pronunciamientos del fallo recurrido son la lógica consecuencia del que hemos considerado y por lo tanto, tampoco se sostienen. La Sala sentenciadora no resolvió en cuanto a los otros dos remedios solicitados referentes a la resolución de la venta judicial y a la imposición de un gravamen en el Registro sobre la propiedad de Molina por razón de la deuda contributiva de la sociedad. Ya dijimos que aquí no hubo violación del pacto fiduciario por parte de los exsocios Dávila ni se imputa fraude o colusión con el Banco. Tales remedios envuelven, *a fortiori*, la condición de tercero o no tercero del adquirente Molina. Este Tribunal tampoco ha de resolver en cuanto a dichos remedios por no ser ahora procedente, ante los hechos en el récord y por las razones que pasamos a exponer.

La situación de derecho de este caso según el récord se rige fundamentalmente por lo dispuesto en el *Art.* 104 del Código de Comercio, ed. 1932. El demandante responde *solidariamente* con los otros socios de las deudas de la sociedad disuelta, en este caso la deuda contributiva. En lo que respecta a acreedores y terceros él no puede escapar dicha responsabilidad *solidaria* que le impone la ley, a través del pacto de fiducia, ni puede invocar este pacto en cuanto a acreedores, en descargo de esa responsabilidad. Ese hecho distingue el caso de autos de otras situaciones en que están envueltos pactos de esta naturaleza, donde se sitúan bienes en manos de un fiduciario para el pago de deudas. Se distingue también de la situación que trata el *Art.* 23 de la Ley Hipotecaria referente a la adjudicación de bienes *hereditarios* con la obligación de emplear su importe en el pago de deudas o cargas de la misma herencia. (5)

---

(5) "Los títulos mencionados en los artículos 2 y 5 que no estén debidamente inscritos o anotados en el Registro no podrán perjudicar a tercero.

.  .  .  .  .  .  .  .

"En la adjudicación de bienes inmuebles determinados en una herencia o concurso a un partícipe, a un acreedor o a un extraño, con la obligación de emplear su importe en el pago de deudas o cargas de la misma

Se alega en la demanda que debido a los procedimientos en el caso seguido en la Sala de Ponce, el demandante está expuesto a tener que satisfacer la deuda contributiva en una tercera parte adicional. Su obligación de satisfacer toda la deuda no fue alterada porque por ley él está obligado a pagarla *solidariamente*, y no mancomunadamente con los exsocios. El día en que hubiere descargado esta responsabilidad podría surgir el momento de resarcirse de sus exsocios bajo el pacto fiduciario, y de no responder éstos, estaría en orden entonces considerar y pasar sobre la responsabilidad del tercero adquirente en subasta. (⁶)

*Por los fundamentos anteriormente expuestos se revocará la sentencia recurrida y se dictará otra (1) desestimando la demanda original, con imposición de costas al demandante incluyendo las de apelación, y $1000 de honorarios de abogado ante la Sala de instancia; (2) desestimando la demanda del Interventor Estado Libre Asociado.*

---

herencia o concurso, se hará constar la condición con la cual los bienes se adjudican al inscribirlos a nombre del adjudicatario, y surtirá los efectos que esta ley establece en el número 1⁹ del artículo 37."

El *Art.* 1599 del Código Civil, ed. 1930, dispone que la participación entre socios se rige por las reglas de las herencias, así en su forma como en las *obligaciones* que de ella resultan. No obstante, el *Art.* 104 del Código de Comercio predomina en lo referente a la naturaleza solidaria de la obligación de los socios por las deudas sociales en las compañías mercantiles colectivas.

(⁶) El Tribunal no deja de apreciar en todo su valor el estudio realizado por las distinguidas representaciones legales, tanto de una parte como de la otra, para ilustrarlo sobre las difíciles cuestiones suscitadas y discutidas en torno a la esencia y naturaleza de la cláusula Octava en su dual aspecto traslativo y de obligatoriedad en lo que al tercero hipotecario respecta, y sobre otros puntos relacionados que son igualmente de fundamental importancia. A tono con la función judicial de resolver controversias, que se distingue de la del tratadista del derecho o del comentarista, no habremos de hacer pronunciamientos sobre tales aspectos por importantes que puedan ser para la doctrina, no estando madura en los hechos esa cuestión litigiosa.